UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/22/2021__
```

------------------------------------------------------------------X
                                        :

GAIL KITT,                                    :

                             :

                      Petitioner,     :

                             :          19 Civ. 6632 (LJL) (DCJ)

         -v-                    :

                             :          <u>OPINION AND ORDER</u>

ANDREW SAUL,                    :
Commissioner of Social Security     :

                             :

                    Respondent.    :

                             :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Petitioner Gail Kitt ("Petitioner" or "Kitt") moves, pursuant to Federal Rule of Civil

Procedure 12(c), for judgment on the pleadings and remand to the Social Security Administration

for calculation of benefits.  The Administrative Law Judge ("ALJ") found that Petitioner became

disabled and entitled to Supplemental Security Income ("SSI") benefits on January 12, 2016,

declining to accept Petitioner's argument that her disability had an onset date of September 3,

2011.  Dkt. No. 19 at 2.  Petitioner submits that the ALJ committed reversible error in the

determination of her disability date and asks that the Court enter a judgment finding that the date

of the onset of her disability was September 3, 2011.  *Id.*  In the alternative, she also requests

that the Court find that she was disabled at least by December 2013 and remand for calculation

of benefits as to the period after December 2013, while remanding for further proceedings to

determine an onset date between September 2011 and December 2013.  Dkt. No. 27 at 3.

Petitioner seeks review of the ALJ's determination that she was not disabled under Sections

216(i) and 223(d) of the Social Security Act through December 31, 2013, her date last insured

("DLI").  *Id*; 42 U.S.C. §§ 416(i), 423(d).  She asks that the Court remand solely for the calculation of benefits from an onset date of September 3, 2011.  *Id.*

Respondent and cross-petitioner, Commissioner of Social Security Andrew Saul ("Respondent" or "Commissioner"), concedes that the ALJ's finding that Kitt was disabled beginning January 12, 2016 is not based on substantial evidence.  Dkt. No. 21 at 12.  However, the Commissioner argues that remand for further proceedings to determine the proper onset date of disability—as well as for calculation of benefits—is the appropriate remedy.  *Id.*  For the following reasons, the Court finds that the ALJ's determination that the date of the onset of Kitt's disability was January 12, 2016 was not based on substantial evidence.  The Court also determines that remand to the ALJ for further proceedings to determine the proper onset date of disability, rather than solely for the calculation of benefits, is the appropriate remedy.

## FACTUAL BACKGROUND

### A.        Procedural History

This now eight-year-old case began on May 17, 2012 when Petitioner applied, under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*, respectively, for Social Security Disability Insurance ("SSD") and SSI benefits.  Compl. ¶ 14. On July 30, 2012, the Social Security Administration ("SSA") denied Petitioner's application, and she responded timely by requesting a hearing before an ALJ.  *Id.* ¶ 15.  Petitioner's first of two hearings before ALJs commenced on August 19, 2013 in the Bronx, New York before ALJ Paul A. Heyman, who denied all of her claims.  *Id.* ¶ 16.  ALJ Heyman found that Petitioner was not disabled under the SSA's listings and was therefore capable of performing limited sedentary work.  *Id.*; Dkt. No. 15-2.  After the Appeals Council denied Petitioner's request for review, she filed suit in the Southern District of New York, and her case was transferred to the Honorable

John Gleeson in the United States District Court for the Eastern District of New York.  Compl. ¶ 18.  Judge Gleeson reversed and remanded, ruling that ALJ Heyman's conducted Petitioner's hearing "in a manner inconsistent with the spirit and the statutory requirements of the Act."  *Id.* ¶ 19; *Kitt v. Comm'r of Soc. Sec.*, 2015 WL 4199281, at *11 (E.D.N.Y. July 13, 2015).  He highlighted that ALJ Heyman had conducted the original hearing with an adversarial tone, had improperly prevented Petitioner from establishing her credibility, and had failed to develop the record.  *Id.*  On Judge Gleeson's order, the matter was assigned to a different ALJ on remand to again consider Ms. Kitt's claim for SSD and SSI benefits.  *Id.;* Compl. ¶ 19.

The claim before this Court stems from this second proceeding, before ALJ Elias Feuer. On March 20, 2019, ALJ Feuer granted Petitioner's application in part, and denied it in part.  Tr. at 339–59; Compl. ¶ 21.  The decision indicated that Petitioner was (1) not disabled under Sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), through December 31, 2013, Petitioner's DLI, and therefore not entitled to any disability insurance benefits; and (2), that Petitioner did not become disabled under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c, until January 12, 2016—not September 3, 2011 as she contended—at which point she became eligible for SSI benefits.  Compl. ¶ 3.  Petitioner and Commissioner both agree that these findings were not supported by substantial evidence, but disagree as to the appropriate course of action by this Court, pursuant to 42 U.S.C. § 405(g).  Put simply, they disagree as to whether the evidence in the record is sufficient for this Court to determine when Petitioner became disabled and entitled to benefits under the Act.

### B.        Medical Evidence as to Disability from 2011 to 2016

Petitioner is a 65-year-old woman who suffers from legal blindness, degenerative disc disease, type two diabetes mellitus with hyperglycemia, end stage renal disease, acidosis, and

alberosclerotic heart disease of native and coronary artery without angina pectoris.  Compl. ¶¶ 2, 24.  She also receives dialysis treatment for renal failure.  *Id.* ¶ 2.  During much of the time between December of 2013 and April of 2016, Petitioner lived in homeless shelters around New York City.  Dkt. No. 15 at 1140.  Having worked for 25 years as an administrative assistant at the Manhattan District Attorney's Office and two years at a private law firm, she moved to Pennsylvania in 2011 for employment as a housekeeper at the Pocono Country Place.  Compl. ¶ 23.  In September 2011, she was diagnosed with diabetes mellitus type two ("diabetes") after reporting significant symptoms, including a history of gestational diabetes, weight loss, tingling in her hands and feet, and frequent urination.  Dkt. No. 15 at 232; Dkt. No. 19 at 3.  She applied for SSI and SSD benefits shortly thereafter on May 17, 2012, after she was fired from her job for sitting down too often.  Dkt. No. 15 at 83, 84.

On June 18, 2013, Nurse Practitioner Francisco Diaz ("N.P. Diaz") completed a disability assessment entitled "Physician's Report of Disability Due to Physical Impairment," in which he indicated that Kitt suffered from uncontrolled diabetes and also from degenerative joint disease of the spine and hip.  *Id*. at 290–92.  He determined that Kitt would have to lie down for three hours per day to manage her pain and that she could sit continuously only for one hour (for five total daily hours), could stand continuously for one hour (for two total daily hours), and walk continuously for ten minutes (for three total daily hours).  *Id.* at 292–93.  He further noted that Kitt could lift one to five pounds only occasionally—and that while she could occasionally bend over, she could never squat, crawl, climb, or reach.  *Id.* at 294.  N.P. Diaz concluded that Kitt could frequently use her left hand for handling and fingering, and continuously for pushing and pulling arm controls, and that she could continuously do the same with her right hand and use her feet for repetitive movements.  *Id* at 294–95.  But he also concluded that Kitt would have

difficulty travelling alone by bus or subway on a daily basis due to the pain and dizziness caused by walking and because she would need to rest in order to relieve her pain.  *Id.* at 295.  After her assessment with N.P. Diaz, Petitioner continued to undergo physical therapy for treatment of sciatica, hip pain, and osteoarthritis.  *Id.* at 297–98, 337–38.  Physical therapist Sarah Baker described that she had pain while walking, needed a cane to walk, needed to lie down during the day to mitigate pain, and was not capable of traversing stairs.  *Id.* at 337.

Petitioner then underwent a consultative exam with Dr. Dipti Joshi on September 23, 2013.  *Id.* at 313.  Dr. Joshi reported that Kitt suffered from lower back pain with radiculopathy, diabetes with neuropathy, pain in her wrists and finger, hypercholesterolemia, and a history of eczema.  *Id.* at 315–16.  He further noted that her limitations included bending, squatting, and reaching with her shoulders; that she should avoid heavy lifting, carrying, pushing, or pulling— just as N.P. Diaz's had concluded—and that she had poor vision of 20/100.  *Id.* at 314, 316.  He stated that Kitt also had moderate limitations in reaching with her shoulders and that she should avoid heavy lifting, though she could occasionally lift up to ten pounds.  *Id.* at 318.  Dr. Joshi completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" report opining that Kitt could sit for five hours at a time and stand or walk for up to two hours at a time; that, in an eight-hour workday, she could sit for six hours and stand or walk for up to one hour each; that she required a cane to ambulate and could occasionally use both hands for reaching, handling, fingering, feeling, pushing, and pulling; that she could occasionally climb stairs, ramps, ladders, and scaffolds; and that she could occasionally balance, stoop, kneel, crouch, and crawl.  *Id.* at 318–21.  He further cautioned that Kitt could never be exposed to unprotected heights, but that she could occasionally be exposed to moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants,

extreme cold and heat, and vibrations.  *Id.* at 322.  She could also shop; travel without assistance; ambulate without use of a wheelchair, walker, two canes or two crutches; walk a block at a reasonable pace; use public transit; climb a few steps at a reasonable pace with the use of a handrail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, or use papers and files.  *Id.* at 323.

After her consultation with Dr. Joshi, Petitioner's vision continued to deteriorate and her diabetic condition worsened such that she was diagnosed with diabetic retinopathy on March 13, 2014.  *Id.* at 775, 797, 816.  An eye examination on February 7, 2014 showed that Petitioner's vision had deteriorated to 20/250 and 20/125, uncorrected.  *Id.* at 825.  But, on October 9, 2014, Dr. Agemy opined that while plaintiff had severe non-proliferative diabetic retinopathy in both eyes with macular edema, she had a good prognosis for vision.  *Id.* at 836.  On August 6, 2014, physician assistant ("P.A.") Dina Louie opined in a letter that Kitt needed bed rest when in pain.  *Id.* at 876.  She noted that Kitt had a history of right hip fracture, osteoarthritis, and chronic lower back pain with sciatica.  *Id.* at 876.  She then supplemented this analysis with a December 11, 2014 letter reiterating that Kitt's diabetes was uncontrolled, that she suffered from chronic arthritic conditions, and that she needed extended bed rest during the day.  *Id.* at 877.

Also in late 2014, Petitioner was evaluated by Dr. Deepika Bajaj and physical therapist Dr. Islam Bekhet.  *Id.* at 839, 865–71.  The former wrote, in a November 7, 2014 letter, that Kitt's disc bulge in the lumbar spine rendered her fully disabled and incapable of working, referencing an MRI that revealed several bulges, lateral disc herniations, and grade 1 spondylolisthesis.  *Id.* at 839, 858.  This was in line with nerve conduction velocity studies he had performed on April 22, 2014, which found results consistent with polyneuropathy.  *Id.* at 860. Dr. Bekhet observed that Kitt walked with a "limping gait"; that she had difficulty walking

for more than half a block, bending over, or standing or sitting for more than five minutes without pain.  *Id.* at 865–68.  He further advised that Kitt rest and not sit, stand, climb stairs, or walk for long periods of time.  *Id.* at 868.

In September 2015, Ms. Kitt began physical therapy at Ahava Medical & Rehabilitation in Brooklyn, New York with Neha Doshi for back pain associated with her degenerative disc disease.  *Id.* at 928.  She was again diagnosed with "abnormality of gait," Ms. Doshi's initial assessment having reflected that Petitioner suffered from "mid/low back pain for the past few years which has recently gotten worse."  *Id.*  Ms. Kitt also consulted with additional physical and occupational therapists at Ahava Medical & Rehabilitation from September to December of 2015.  *Id.* at 930, 939–44.

### C.        Medical Status and Disability from 2016 – Present

Since January 12, 2016—the date ALJ Feuer determined Kitt's disability to have onset—Petitioner has continued to suffer from medical maladies.  On that date, Kitt presented to Dr. Chaim Shtock for an orthopedic examination, at the SSA's behest.  *Id.* at 774.  Dr. Shtock reported that Petitioner had a slow gait which caused her to wobble when walking without a cane; could squat to 30 percent at maximum; was able to rise from a chair with difficulty; had weak hand grip strength; had marked limitations with frequent stair climbing, walking long distances, and performing overhead activities using both arms; had moderate to marked limitations with heavy lifting, squatting, kneeling, crouching, standing long periods, sitting long periods, and frequent bending; and that her cervical spine ranges of motion were reduced, along with various other deficiencies.  *Id.* at 776–77.  Later in 2016, Kitt was diagnosed with severe and life-threatening coronary artery disease, for which she underwent quadruple coronary artery bypass surgery after a myocardial infarction in 2017.  *Id.* at 1145; 1199-1200; 2136.  During this

time period, her vision continued to deteriorate, and her comorbidities associated with diabetes also worsened. *Id.* at 1659; 1881. In 2017, Kitt was diagnosed with hypertensive emergency, stage III chronic kidney disease, coronary artery disease, acute CHF, hypoalemia, and normocytic anemia after a visit to the emergency room. *Id.* at 2143; 2602–05.

During 2017 and into 2018, Petitioner's condition worsened yet. During this time, she was deemed legally blind and was advised that she would need to undergo dialysis treatment. *Id.* at 1862; 2610; *see id.* at 2614-3312. On March 31, 2018, she underwent an evaluation by Dr. John Fkiaris, who diagnosed her with twelve medical conditions—most of which reiterated conditions that previous medical professionals had diagnosed her with—and gave her a "poor" prognosis. *Id.* at 1144–58. Dr. Fkiaris reported that Kitt had a "marked limitation" in all functions he evaluated; that she was significantly limited in activities such as sitting, standing, and walking; that she required a walker; and that, as a result of these conditions, she could not perform the activities associated with sedentary work. *Id.*

**D.         Second ALJ Proceeding and Medical Expert Testimony**

On December 4, 2018, ALJ Feuer presided over the second of two SSA administrative proceedings, after Judge Gleeson remanded the case for a hearing before a new ALJ. Two experts—medical expert Dr. Charles Cooke and vocational expert Mr. William Atkinson— testified at the hearing by telephone, as did Petitioner. *Id.* at 392–436.

Dr. Cooke, a board-certified physician with extensive experience and credentials in the medical field, testified that Petitioner's diabetes—which was first diagnosed in 2011—was never under control, in part due to her difficulty adhering to a proper diet and her failure consistently to take the necessary medications she was prescribed. *Id.* at 397. He confirmed that she suffered from diabetic neuropathy after reviewing her hemoglobin A1C levels indicated in the record. *Id.*

Dr. Cooke also testified as to Petitioner's back ailments, opining that her impairments were "the equivalent of" Listing 1.04A (disorders of the spine) and Listing 11.14 (peripheral neuropathy). *Id.* at 400.  He identified several instances in the record demonstrating Petitioner's neuropathy, including lower back pain that radiated through her knee as of May 5, 2012; a June 11, 2013 exam which recorded burning and loss of sensation in her feet; her difficulty walking; and a November 3, 2014 MRI which showed several disc bulges in her lumbar spine, lateral disc herniation, and grade 1 spondylolisthesis. *Id.* at 398–99; *see id.* at 858.  Indeed, Dr. Cooke noted that these maladies were medically equivalent to Listings 1.04A and 11.14 and concluded that there was significant evidence tending to show Kitt's disability complaints. *Id.* at 400.

Dr. Cooke's testimony, however, was confusing and ambiguous as to the date on which Petitioner met or equaled Listing 1.04A and Listing 11.14.   He initially testified that she had the equivalent of Listing 1.04A and Listing 11.14 as of May 3, 2014, although he was not clear the basis on which he reached that date.[1] *Id.*  But later, during questioning from counsel as to whether Dr. Cooke had an opinion regarding the period of September 3, 2011 to May 3, 2014, Dr. Cooke testified: Yes, I think it would cover both those times" and this his opinion that Petitioner's "conditions met or were medically equivalent to 1.04a and 11.14a would also cover the period of time prior to May 3, 2014." Dkt. No. 15-2 at 404.  Then, under renewed questioning from the ALJ as to whether Dr. Cooke wanted to modify his testimony that Petitioner met or equaled the Listings as of May 3, 2014, the transcript records Dr. Cooke as having answered: "No, 2011 – well, [INAUDIBLE] to the changes that far back because the claims in there were not nearly as completely – [INAUDIBLE] were not as complete as they

---

[1] Dr. Cooke appeared to rely on the results of an MRI which showed the disc bulges in her lumbar spine, lateral disc herniation, and grade 1 spondylolisthesis. Tr. at 398–400.  But the MRI is actually dated November 3, 2014.

were in the – with the 2014 date I mentioned." *Id*. at 405.  He testified that Petitioner, prior to 2014, "was having a – clearly, a pretty significant amount of trouble with it," but then added that the "EMG and the MRIs . . . all from the latter part of 2014 . . . were decisive in supporting [his] decisions about the listings." *Id*. at 405-06.  As to residual functional limitations during the period from September 2011 through May 3, 2014, before she met the Listing, Dr. Cooke gave testimony that that Petitioner lacked residual functional capacity ("RFC") to perform sedentary work and should be considered disabled as of May 3, 2014.  *See, e.g., Beckles v. Barnhart*, 340 F. Supp.2d 285, 289 (E.D.N.Y. 2004) ("'According to the SSA, sedentary work generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day'") (quoting *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)).  He testified that Petitioner should be able to sit "four hours out of either with the ability to – permission to change positions, sit down and stand up for a few minutes and then sit back down."   Dkt. No. 15-2 at 407.  He also appeared to testify that before May 3, 2014, during a seven to eight hour workday, Petitioner could "sit four hours, stand two, and walk one." *Id*.  In response to questions, he stated, however, that he did not think Petitioner could work a total of eight hours in a day and "probably" could not work seven hours. *Id*. at 408.  He also then said both that the maximum number of hours a day she could have worked from 2011 on was four hours but also that between sitting, standing, and walking, she "ought to be able to sit for a couple of hours, walk a couple of hours and just standing for one hour." *Id*. at 408-09.   He also testified that from September 2011 until May 2014, it would be "helpful" for Petitioner to have a cane to walk. *Id*. at 411.

Mr. Atkinson, the vocational expert, testified that a person of Petitioner's age, education, and experience who had a full range of sedentary motion but was limited to lifting, carrying,

pushing or pulling five pounds would be able to perform the occupation of administrative assistant. *Id.* at 427–28. He noted, however, that such a person could perform the job as generally performed, but not as actually performed and that if the person could only occasionally "reach, handle, and finger" or only work up to four hours, she or he would not be able to perform the job full time. *Id.* at 429–30.

### E.     ALJ Feurer's Decision

ALJ Feuer issued his decision on March 20, 2019. He concluded that: (1) Petitioner was not disabled through December 31, 2013—her DLI—and (2), that Petitioner became disabled only on January 12, 2016 but not before that date. The parties agree that ALJ Feuer's determination that Ms. Kitt was not disabled until January 12, 2016 was not supported by substantial evidence. Dkt. No. 19 at 2; Dkt. No. 21 at 12.

ALJ Feuer followed the five-step procedure set forth in 20 C.F.R. §§ 404.1520, 416.920 that ALJs are required to follow in evaluating a disability claim. *See Cichocki v. Astrue*, 729 F.3d 172, 173 n.1 (2d Cir. 2013). He considered: (1) whether Petitioner engaged in substantial gainful activity; (2), whether she had a medically determinable impairment that was "severe" or a combination of impairments that was "severe"; (3) whether her impairment or combination of impairments was of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, App. 1; (4) whether she had the RFC to perform the requirements of her past relevant work; and (5) whether she was able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920; *see* Dkt. No. 15-2 at 343–44.

At step one, ALJ Feuer determined that Kitt had not engaged in substantial gainful activity from her alleged onset date of September 3, 2011. Dkt. No. 15-2 at 345. At step two, he found that Petitioner suffered from several severe impairments that impaired her ability to perform basic

work activities—namely, diabetes mellitus, diabetic neuropathy, diabetic retinopathy, lumbar bulges and disc herniations, and lumbar radiculopathy from September 3, 2011 onwards and hypertension, coronary artery disease status post bypass, and end stage renal disease beginning on January 12, 2016. *Id*; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1508, 404.1521. At the third step of the inquiry, he determined that, despite the above maladies, Petitioner's impairments did not, individually or in combination, meet or equal the criteria of an impairment identified in the Commissioner's "Listings of Impairments," with particular reference to Listings 1.04 (spinal impairment), 2.02, 2.04 (diabetic retinopathy), 4.02, 4.04 (hypertension, coronary artery disease), 9.00 (diabetes mellitus), 11.08 (lumbar radiculopathy), and 11.14 (diabetic neuropathy). *Id.* at 345–47 (referencing 20 C.F.R. Part 404, Subpart P, App. 1). ALJ Feuer criticized Dr. Cooke for having initially testified that Petitioner's impairments medically equaled Listings 1.04A and 11.14 as of May 3, 2014 and then testifying that they met those listings as of May 3, 2014 and gave his opinions little weight as not supported by the record. *Id.* at 347. ALJ Feuer did opine that the record was sufficient to find that Kitt's end-stage renal disease met the requirements of Listing 6.03 as of March 1, 2018. *Id.* at 345.

At step four, ALJ Feuer found that Petitioner retained the RFC to perform sedentary work until January 12, 2016 except that she could sit no more than 6 hours in an 8 hour day, lift no more than five pouts, and stand or walk up to 2 hours in an 8 hour day. *Id.* at 346–58. The ALJ again afforded little weight to Dr. Cooke's testimony regarding Petitioner's RFC prior to May of 2014 (except what ALJ Feuer believed was his testimony that Petitioner had no limitations in her upper extremities prior to the date last insured) on the basis that Dr. Cooke did not review in full the medical evidence pertaining to the time period between 2011 and May of 2014 and that the treatment notes reflected that Petitioner was less limited during the period at issue than concluded

by Dr. Cooke and that he provided "inconsistent testimony regarding [Petitioner's] residual functional capacity." *Id.* at 349.  ALJ Feuer also assigned little weight to the opinions of N.P. Diaz and Ms. Baker in determining that Petitioner retained her RFC to work.  *Id.* at 350–51.  Finally, at the last step, ALJ Feuer found that given Petitioner's age, education, and work experience—in conjunction with her RFC—she was disabled as of January 12, 2016, but not prior to this date.  *Id.* at 358–59; *see* 20 CFR §§ 404.1520(a)(4)(v), 404.1560–64; 20 CFR Part 404, Subpart P, App. 2 § 201.06.  In arriving at this determination, he accorded great weight to the opinion of Dr. Chaim Shtock that as of June 12, 2016,[2] Petitioner had "moderate to marked limitation with heavy lifting, squatting, kneeling and crouching, standing long periods, sitting long periods, and frequent bending and marked limitation with frequent stair climbing, walking long distance, performing overhead activities using both arms."  Dkt. No. 15 at  356.  He determined that there was no other work at such a sedentary level that Petitioner could perform after this date.  *Id.* at 358.

## LEGAL STANDARD

A judgment on the pleadings under Rule 12(c) is appropriate where "the movant establishes that no material issue of fact remains to be resolved" such that a judgment on the merits can be made "merely by considering the contents of the pleadings."  *Guzman v. Astrue*, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (citing *Juster Assocs. v. City of Rutland*, 901 F.2d 366, 269 (2d Cir. 1990)).  The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (made applicable through 42 U.S.C. § 1383(c)(3)).  Put another way, the Court has discretion to

---

[2] The reference to June 12, 2016 was in error.  The examination took place on January 12, 2016. Tr. 774-78.

determine whether or not a remand is appropriate in evaluating the ALJ's decision. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting § 405(g)); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The Court may overturn the ALJ's decision where it is based on legal error or is not supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla"—it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted); *see Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing *Perales*, 402 U.S. at 401); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (same). Though this standard is deferential to an ALJ's finding, an ALJ's disability determination must be reversed or remanded if it is not supported by substantial evidence or if it contains legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Where there are gaps in the administrative record or the ALJ has misapplied legal standards, "remand to the commissioner for further development is in order." *Id.* at 82–83 (quoting *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). Thus, a reversal of the ALJ's disability date determination—and a date finding in its stead by this Court—is appropriate under sentence four of 42 U.S.C. § 405(g) only where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

## DISCUSSION

## I.   THE ALJ'S FINDINGS ON DISABILITY ONSET DATE

ALJ Feuer's determinations at steps three and four of the 20 CFR §§ 404.1520, 416.920 inquiry are not supported by substantial evidence. In concluding that Petitioner's impairments did not meet or equal the Listings until March 1, 2018, ALJ Feuer failed to assign the proper

weight to the medical expert's and treating medical professionals' opinions and his characterization of the evidence is unsupported by the record.  His conclusion, under step four of the inquiry, that Petitioner had the RFC to perform sedentary work as defined under 20 CFR §§ 404.1567(a) and 416.967(a) until January 12, 2016 is also not supported by substantial evidence and is in error.  Thus, the finding of disability as of January 12, 2016 cannot stand.  Both Petitioner and the Commissioner agree on this point.  Dkt. No. 19 at 2; Dkt. No. 21 at 12.

### A.  ALJ Feuer Failed to Assign the Proper Weight to Expert Testimony and Evidence Based on Treating Medical Professionals' Opinions

SSA regulations require ALJs to follow a six-factor test in evaluating and deciding the weight to give any medical opinion.  20 CFR § 404.1527(c).  The administrative regulations further require that ALJs give "good reasons" in deciding the weight to give a treating source's medical opinion.  20 CFR § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("the Commissioner will always give good reasons in her notice of determination for the weight she gives claimant's treating source's opinion") (internal citations and punctuation omitted); *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *11 (E.D.N.Y. Aug. 10, 2011) (reiterating that an ALJ must give good reasons for weight accorded to medical opinions).

ALJ Feuer neglected to apply these factors and to give "good reasons" for the weight he accorded to the testimony of the medical experts who testified in Kitt's hearing.  In particular, ALJ Feuer failed to justify his decision to accord little weight to the testimony of impartial medical expert Dr. Cooke.  Dr. Cooke opined that Petitioner met the Listings as of at least May 3, 2014, and indicated that Petitioner may have met them as early as the proposed onset date of September 3, 2011, and therefore did not have the RFC to work.  Dkt. No. 15 at 344–45.  ALJ

Feuer determined that Cooke's opinions were entitled to "little weight . . . as they are not supported by the record." *Id*. at 347.  He made this determination because "Dr. Cooke did not have the opportunity to consider the medical evidence of the record in its entirety," and because he claimed to have identified several places where Dr. Cooke's failed to recall record evidence. *Id*.

However, Dr. Cooke's opinion was supported by the evidence in the record.  Dr. Cooke opined that Petitioner's consistently elevated levels of hemoglobin suggested an extended period of poorly controlled diabetes which caused neuropathy.  He also identified evidence in the record which showed her pain and neuropathy since September 2011 and evidence of lower back pain from 2012 and 2013.  *Id*. at 397-399.  Although ALJ Feuer criticized Dr. Cooke for his lack of recollection of evidence that Petitioner had difficulty standing up from a seated position, Dr. Cooke explained that in his experience such limitations would be consistent with Petitioner's impairments.  *Id*. at 403-04.  The record also contains evidence supporting the conclusion that Petitioner could not carry more than five pounds.  *Id*. at 294, 316.   ALJ Feuer's conclusions also were infected by his incorrect characterizations of other portions of the record, as described below.

Moreover, although the ALJ concluded that Dr. Cooke's failure to review records after 2015, he testified that he reviewed the records he was instructed to, and as Petitioner points out, the documents after 2015 would only have corroborated Petitioner's worsening condition after 2015.  The ALJ failed to explain how Dr. Cooke's failure to review those post-2015 records undermines his description of Petitioner's disability condition in the years *before* 2015— including the finding that she was disabled as of May 3, 2014.

The Court finds that ALJ Feuer's decision to assign little weight to portions of Dr. Cooke's testimony was unsupported by substantial evidence, as Dr. Cooke supported these conclusions with pertinent medical evidence. *See* 20 C.F.R. § 404.1527(c)(3) ("the weight [the Commissioner] will give [nonexamining medical sources] will depend on the degree to which they provide supporting explanations for their medical opinions"); *Burgess v. Astrue*, 537 F.3d 117, 128–29 (2d Cir. 2008) ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or indeed for any competent medical opinion") (internal citations and quotation marks omitted) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) ("While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who . . . testified before him.") (internal citations and quotations marks omitted).

The ALJ additionally, and without sufficient reason, gave, alternately, no weight, "some" weight, or "little weight" to the opinions of several of the medical professionals and physicians who treated Petitioner between 2011 and 2016. *Id.* at 349–52. These included N.P. Diaz, P.A. Louie, Dr. Bekhet, and Dr. Joshi. "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must provide "good reasons" for the weight given to a treating physician's medical opinion. 20 C.F.R. § 404.1527(c)(2); *see Burgess*, 537 F.3d at 129–30 (stating that the ALJ "must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion" and citing Section 404.1527) (internal quotation marks omitted);

*Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

ALJ Feuer appeared to rely only on particularized portions of the record—to the exclusion of the record as a whole—in assigning little weight to the opinions of N.P. Diaz, P.A. Louie, Dr. Bekhet, and Dr. Joshi.  He concluded that "treatment notes frequently showed grossly normal neurological examinations with normal gait, normal strength bilaterally, and normal sensation" based on only 69 pages of the over 3,000-page record.  *Id.* at 349–52 (citing Exhibit 15F at 7, 12, 15, 20, 27, 59, 62; Exhibit 16F at 5, 17, 20; Exhibit 23F at 16F; Exhibit 24F at 27); *Id.* at 227–36, 241–87, 951, 956, 959, 964, 971, 1003, 1006, 1015, 1027, 1030, 1565, 1627.  But these seemingly arbitrarily selected portions of the record did not provide "good reason" for ALJ Feuer's decision to give little weight to the opinions of these medical professionals who had concluded, respectively, that Petitioner suffered from uncontrolled diabetes and degenerative joint disease of the spine and hip; dealt with chronic arthritis and needed extended bed rest during the day due to chronic lower back pain; had difficulty walking for more than half a block, bending over, or standing or sitting for more than five minutes without pain; and that she contended with lower back pain with radiculopathy, diabetes with neuropathy, pain in her wrist and finger, hypercholesterolemia, and a history of eczema, causing limitations in her ability to walk and lift.  *Id.* at 297–98, 314–21, 337–38, 868, 877.

The Commissioner concedes that many of the conclusions ALJ Feuer draws from the cited exhibits are unsupported by the evidence.  Dkt. No. 21 at 14.  The Commissioner points out that although "the citations to the medical reports at Tr. 951, 964, and 971 showed normal neurological examination observations, the observing doctor nevertheless ultimately diagnosed

peripheral neuropathy." *Id.*; *see* Dkt. No. 15 at 951, 964–65, 971.  Similarly, ALJ Feuer's

citations to portions of Dr. Joshi's opinions—the portions he gave "significant weight"—do not

demonstrate that Petitioner showed normal gait as the ALJ concluded.  Dkt. No. 15 at 352 (citing

Exhibit 1F, 3F, Exhibit 15F at 7, 12, 15, 20, 27, 59, 62; Exhibit 16F at 5, 17, 20; Exhibit 23F at

165; Exhibit 24F at 27).  Instead, they show that Petitioner suffered from an ataxic gait.  *Id.* at

1627; *see* Dkt. No. 19 at 24; Dkt. No. 21 at 14.  Further, these exhibits which ALJ Feuer

consistently relied upon demonstrate that Petitioner suffered from chronic pain and numbness,

and describe that she was diagnosed with sciatica, reduced sensation in her feet, peripheral

neuropathy, diabetic retinopathy, generalized osteoarthritis and difficulties with her gait,

including ataxic gait.  *See id.* at 232, 249, 953, 964, 969, 971, 1553, 1626, 1627.

The cited pages from which the ALJ concluded that Petitioner "showed grossly normal

neurological examinations" consistently demonstrate that she suffered from pain, as described;

indeed, in one of the exhibits cited, Petitioner went to the doctor for evaluation in the first place

due to hip pain stemming from an incident where her mobility limitations caused her to slip and

fall in a puddle.  *Id.* at 950.  These selected portions of the record are also not representative of

the time between Petitioner's alleged disability onset date of September 3, 2011 and the ALJ's

determined onset date of January 12, 2016.  For one, they number 69 out of the approximately

3,000 pages in the record.  Moreover, the majority of the cited exhibits—eleven of the

fourteen—pertain to 2015, with only two referencing examinations in 2011 or 2012.

The record reflects that between 2011 and 2016, Petitioner's treating physicians and

medical professionals diagnosed her with diabetes in September 2011 after she reported

significant symptoms, including weight loss, tingling in her hands and feet, and frequent

urination.  *Id.* at 232.  N.P. Diaz's "Physician's Report of Disability Due to Physical

Impairment" on June 18, 2013, which ALJ Feuer assigned little weight because "treatment notes

show the claimant is less limited," *Id*. at 351, described how Petitioner suffered from

uncontrolled diabetes and from degenerative joint disease of the spine and hip. *Id.* at 290.

Petitioner's significant spinal debilities were affirmed by Dr. Bekhet in a November 7, 2014

letter, which described that an MRI revealed several lumbar spine disc bulges, lateral disc

herniations, and grade 1 spondylolisthesis rendered her fully disabled and incapable of working.

*Id.* at 839, 858.  ALJ Feuer again gave only "some weight" to this opinion based on treatment

notes in the 69 pages of exhibits he cited numerous times.  *Id.* at 351.  Furthermore, ALJ Feuer

appeared to give little weight to physical therapist Neha Doshi's September 2015 diagnosis of

"abnormality of gait" from "mid/low back pain for the past few years which has recently gotten

worse," as it was not discussed in his disability onset determination.  *Id.* at 928.  Thus, ALJ

Feuer's decision to accord Dr. Cooke's testimony and the opinions of several of Petitioner's

treating physicians and medical professionals "some" or "little" weight was not supported by

"good reasons" and not based on substantial evidence.  *See Burgess v. Astrue*, 537 F.3d 117,

130–31 (2d Cir. 2008); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

### B.  ALJ Feuer's Choice of January 12, 2016 For the Onset Date of Petitioner's Disability is Unsupported by Substantial Evidence.

ALJ Feuer's conclusion that Petitioner had the RFC to perform sedentary work until

January 12, 2016, as defined in 20 C.F.R. §§ 404.1567(a) & 416.967(a), is not supported by

substantial evidence.  The ALJ's decision did not explain why this date was chosen for the onset

of disability.  *Id*. at 343 (stating only that: "After careful consideration of all the evidence, the

Administrative Law Judge concludes that the claimant was not disable prior to January 12, 2016,

but became disabled on that date . . .").  The Commissioner concedes that "the ALJ's finding of

disability as of January 12, 2016 is not based on substantial evidence."  Dkt. No. 21 at 12.  The ALJ failed to take sufficient note of the evidence demonstrating Petitioner's RFC limitations prior to 2016, improperly disregarded medical testimony, and arbitrarily relied on discrete portions of the record, without reference to the evidence in its totality.  He thereby discounted the opinions of several medical professionals who had evaluated Petitioner and found that she suffered from chronic pain and numbness; peripheral neuropathy; diabetic retinopathy; generalized osteoarthritis; "ataxic gait" and "other abnormalities of gait and mobility,"; difficulty walking for more than half a block, bending over, or standing or sitting for more than five minutes without pain; and that she contended with lower back pain with radiculopathy, diabetes with neuropathy, pain in her wrist and finger, hypercholesterolemia, and a history of eczema, causing limitations in her ability to walk and lift.  *Id.* at 232, 249, 297–98, 314–21, 337–38, 352, 868, 877, 953, 964, 969, 971, 1553, 1626, 1627.

The ALJ found that vocational expert Atkinson demonstrated that Petitioner was capable of performing her past relevant work as an administrative assistant prior to January 12, 2016.  *Id.* at 357–58.  That conclusion too was not based on substantial evidence.  Mr. Atkinson actually described that a person of Petitioner's age, education, and experience could perform such sedentary work only *if* she could perform the full range of sedentary work within the limitations proposed by ALJ Feuer.  *Id.* at 428.  Mr. Atkinson stated that Petitioner could not have performed her prior work *as she had previously performed it* and not based on the limitations proposed by ALJ Feuer.  *Id.* at 429–30.  Mr. Atkinson based that opinion on the facts that Petitioner was unable to lift ten pounds and that her additional reaching, handling, and fingering limitations further impeded her ability to perform the job of a full-time administrative assistant.

*Id.* at 428–30.  Furthermore, Dr. Cooke testified that Petitioner was unable to work more than

four hours in a day during the period between 2011 and 2014.  *Id.* at 404.

In relying solely on particular portions of the record, the ALJ concluded that the medical

evidence showed that Petitioner presented normal neurological examinations with "normal gait,

normal strength bilaterally and normal sensation."  *Id.* at 349–52.  However, the ALJ's

conclusions ignored and did not adequately address numerous relevant limitations in the record

that might have supported a finding of disability prior to the determined onset date of January 12,

2016.  For instance, through this analysis, ALJ Feuer gave weight to Dr. Joshi's September 23,

2013 finding that Petitioner could lift or carry up to ten pounds only occasionally, sit up to but no

more than six hours in a day, required a cane and could occasionally be exposed to moving

mechanical parts "significant weight" because it was "based on a thorough, contemporaneous

examination and is consistent with treatment records."  *Id*. at 351-52.  But Dr. Joshi also found

that Petitioner could only stand or walk up to one hour in an eight-hour day, and only

occasionally operate with her extremities and be exposed to humidity, wetness, moderate noise,

and irritants—among other findings—yet the ALJ inexplicably gave only little weight to those

findings.  *Id.* at 352.  Thus, the ALJ's reasoning sought confirmation rather than inquiry.  While

the ALJ has the primary responsibility for weighing the evidence in the record, the ALJ must

nonetheless present "good reasons" for discrediting portions of a medical opinion.  *Burgess v.

Astrue*, 537 F.3d 117, 128–29 (2d Cir. 2008); *Schaal v. Apfel*, 134 F.3d 496, 504–05 (2d Cir.

1998).

ALJ Feuer's opinion further omitted several indications in the record that Petitioner faced

physical limitations prior to January 12, 2016—which might have limited her RFC and supported

an onset date of disability well in advance of this one.  In June 2013, N.P. Diaz concluded that

Petitioner should not drive a car and that her pain and dizziness would cause difficulty commuting by public transit.  Dkt. No. 50 at 295.  He further noted that when she did travel, the chronic pain, filing vision, and difficulty ambulating that she suffered from between September 2011 and January 2016 would limit her.  *Id.*  Dr. Gabriellan diagnosed Petitioner with non-proliferative diabetic retinopathy with diabetic macular edema in her left eye in March 2014.  *Id.* at 816.  In April 2014, nerve conduction velocity studies showed results consistent with polyneuropathy, and in August of that year, P.A. Louie determined that Petitioner required bed rest when she experienced pain due to her chronic condition.  *Id.* at 860, 876.  Dr. Bekhet observed, in October of 2014, that Petitioner walked with a "limping gait" and that she had difficulty walking for more than half a block without pain.  And in September 2015, Ms. Doshi bolstered this conclusion, diagnosing Petitioner with "abnormality of gait."  *Id.* at 928.

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Zwiebel v. Saul*, 2020 WL 6746790, at *13 (E.D.N.Y. Nov. 17, 2020) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).  Even taking into consideration the deference owed to the ALJ's conclusions, this Court determines that the choice of January 12, 2016 as the onset date for Petitioner's disability is not based on substantial evidence.  The ALJ opinion fails to explain in any capacity how the January 12 date is arrived at, rendering it arbitrary.  "An arbitrary onset date selection will not be accepted by a reviewing court," as such an arbitrary finding is not based on substantial evidence.  *Jones v. Colvin*, 2017 WL 1321015, at *14 (S.D.N.Y. Mar. 31, 2017).  When a disability progresses slowly and an ALJ must make a reasoned determination as to the onset date of disability, that determination "must have a legitimate medical basis" and a "[c]onvincing rationale must be given for the date

selected." *Id.* at *14.  In this instance, the ALJ opinion provides *no rationale* for the date selected.

## II.        REMAND FOR FURTHER PROCEEDINGS

The Court further determines that this matter should be remanded for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).  Though Petitioner contends that the record is sufficiently complete such that the case should be remanded solely for the calculation of benefits, reversal for calculation of benefits is appropriate only when the record contains "persuasive proof of disability" and remand for further evidentiary proceedings would serve no purpose. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *see also Butts v. Barnhart*, 388 F.3d 377, 385–86 (2d Cir. 2004) ("when further findings would so plainly help assure the proper disposition of the claim, we believe that remand is particularly appropriate. . . . Where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.") (internal citations and quotation marks omitted); *Carlantone v. Colvin*, 2015 WL 9462956, at *10 (S.D.N.Y. Dec. 17, 2015) ("[w]here the record is sufficiently complete and contains persuasive proof of disability, such that no purpose would be served by additional administrative proceedings, remand for calculation of benefits is warranted.") (internal citation omitted).  In the absence of such compelling evidence of disability, the remedy for applying improper legal standards is reversal and remand for further proceedings.  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

Here, the medical evidence does not plainly and persuasively show that Petitioner became disabled either as of September 3, 2011, or as of May 2014 and a remand for further proceedings would serve to clarify the appropriate onset date.  In particular, Dr. Cooke's testimony was ambiguous and unclear both about when Petitioner met the Listings and when she

became disabled and was not able to sit more than four hours in a day.  As Petitioner's counsel admitted at argument, where the Court is unable to reach a conclusion—other than that the ALJ's decision was not supported by substantial evidence—as a result of gaps and ambiguities in the testimony of the medical expert, the appropriate remedy is not for the Court to fill those gaps but to remand for further testimony by that expert.  Hr'g Tr. at 8.  *See Barnhart*, 388 F.3d at 385–86.

The Court has concluded that it does not have the power to impose time limits on the Commission's actions upon remand.  The Court's power to impose time limits, and to impose the sanction that the petitioner is awarded benefits if those time limits are not met, is "limited to cases where the claimant is entitled to benefits absent the Commissioner's providing expert vocational testimony about the availability of appropriate jobs." *Butts v. Barnhart*, 416 F.3d 101, 104 (2d Cir. 2005); *see also Martin v. Berryhill*, 2019 WL 1756434, at *7 (S.D.N.Y. Feb. 20, 2019).  In this case, it is not clear when—prior to January 12, 2016—Petitioner became disabled and entitled to benefits and the Court therefore cannot select on its own a date from which Petitioner should be awarded benefits if the Commissioner does not meet a deadline.  However, "given the extended litigation in this case, the Court 'expects proceedings [on remand] to be conducted and resolved expeditiously.'" *Martin*, 2019 WL 1756434, at *7 (quoting *Uffre v. Astrue*, 2008 WL 1792436, at *8 (S.D.N.Y. Apr. 8, 2008)).  The Court has requested the Assistant United States Attorney assigned to this case specifically to inform the Commissioner and its counsel—beyond simply providing them a copy of this decision—of the Court's request that the proceedings be handled expeditiously.

Moreover, those proceedings should be handled expeditiously because the scope of remand is limited.  The finding of disability as of January 12, 2016 shall not be disturbed on appeal and the remand is limited to eliciting clarifying testimony from Dr. Cooke both as to his

opinions regarding the onset date of disability and the basis for those opinions.  After eliciting

such testimony, the Commissioner may determine based on the administrative record as a whole

the appropriate onset date.

## **CONCLUSION**

For the aforementioned reasons, Petitioner's motion for judgment on the pleadings is

GRANTED.  The Court determines that the ALJ's conclusion that Petitioner's onset date was

January 12, 2016 was not supported by substantial evidence.  The Court further determines that

remand for further administrative proceedings by the Commissioner pursuant to 42 U.S.C. §

405(g), rather than remand solely for the calculation of benefits, is appropriate.  The record

contains sufficient ambiguities and gaps pertaining to Petitioner's medical status between

September 3, 2011 and January 12, 2016 so as to warrant additional inquiry by the

Commissioner.

The Court deems it appropriate to limit the scope of the remand.  On remand, the finding

of disability from January 12, 2016 on shall not be disturbed.  The remand is limited to eliciting

clarifying testimony from Dr. Cooke both as to his opinions regarding the onset date of disability

and the basis for those opinions.  After eliciting such testimony, the Commissioner may

determine based on the evidence before it the appropriate onset date.  The Court requests and

expects that the Commissioner proceed expeditiously.

SO ORDERED.

Dated: January 22, 2021
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge